UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MUNNIER QUASIM,

                Petitioner,

   v.

PAT GLEBE,

                Respondent.

NO. C14-296-MJP-JPD

REPORT AND RECOMMENDATION

I.    INTRODUCTION AND SUMMARY CONCLUSION

Petitioner is a state prisoner who is currently confined at Stafford Creek Corrections Center in Aberdeen, Washington. He seeks relief under 28 U.S.C. § 2254 from a 2010 judgment and sentence. Respondent has filed an answer to petitioner's habeas petition and has submitted relevant portions of the state court record. Petitioner did not file a response to respondent's answer, however, he filed a motion for a certificate of appealability. The Court, having carefully reviewed the petition, respondent's brief, the state court record, and the balance of the record, concludes that petitioner's federal habeas petition should be DENIED, and this action should be DISMISSED with prejudice. The Court also concludes that petitioner's motion for a certificate of appealability, Dkt. 14, should be DENIED.

REPORT AND RECOMMENDATION - 1

## II. FACTUAL AND PROCEDURAL HISTORY

The Washington Court of Appeals, on direct appeal, summarized the facts relevant to petitioner's conviction as follows:

> Quasim and A.M. were neighbors in a Seattle apartment building. The two would get together about once a week to play dominoes, smoke marijuana, and drink. A.M. found Quasim "very friendly." A.M. testified that the two did not have a physical relationship because she was a lesbian, and that she did not make any advances towards Quasim. However, Quasim made A.M. feel she was "being hit on. . . . He would definitely say this, that—it's just etched in my brain—I have patience. I can wait. I have patience."
>
> The socializing between the two ended after a few months, when Quasim wrote two rambling notes to A.M. that she found "very vulgar and disrespectful and scary." The notes referred to another man Quasim believed A.M. was seeing, and indicated that Quasim felt rejected, jealous, and angry. A.M. reported the letters to the apartment manager, Sarah Van Cleve, who referred her to the Seattle Police Department. Seattle Police Officer John Skommesa spoke with Quasim, informing him that A.M. did not wish to have contact with him. For several months, Quasim and A.M. had little contact.
>
> However, after A.M. was hospitalized in the summer of 2008, Quasim brought her fruit and water, and the two began socializing again. However, A.M. described their relationship as "tense," and testified that frequently she would not open her door when Quasim knocked, even though he knew she was in the apartment. They regularly consumed alcohol and marijuana when together.
>
> On December 4, 2008, Quasim came to A.M.'s apartment with a bottle of tequila for her, a jar of alcoholic beverage for himself, and some marijuana. Quasim knew tequila was A.M.'s drink of choice, and he brought a "fifth" of the liquor on this occasion, which was unusual, because he usually brought "minis." A.M. invited him in. The two watched television, smoked marijuana, and drank alcohol. A.M. drank "two or three" small juice glasses of the tequila, an amount she testified would have no impact on her, at most "[a] little buzz." A.M.'s last memory of the evening was watching television with Quasim.
>
> Jorden Attenborough, A.M.'s next-door neighbor, heard glass break and A.M.'s dog barking that night. Around 12:30 a.m., he heard A.M. loudly shout "get off" or "get out" in a manner signaling displeasure. Attenborough triggered an alarm in his unit, and the building manager Donald Glick came to his apartment. The only noise Glick heard was the barking dog, so he terminated his involvement.

REPORT AND RECOMMENDATION - 2

A.M. awoke the next morning naked and bruised, with broken glass in her hair. Her vagina hurt, her face was swollen, she had a black eye, and had suffered a closed head injury. She testified, "I could tell that I was beat up and raped." She felt as though she had been "really drugged . . . it was like I had taken a bunch of pills or something." The jar Quasim had been drinking from was broken on the floor, there were blood stains on the floor, a table was knocked over, and other furniture had shifted. She went to the apartment manager VanCleve, who called the police. A.M. was taken to the hospital for medical attention and transferred to Harborview Medical Center for a sexual assault examination.

Treatment providers confirmed A.M.'s injuries. The treating physician, Dr. Jared Remington, diagnosed her with a closed head injury and observed that she had a contusion or bruises to her scalp, tenderness in her upper spine, and abrasions along her left shoulder and forearm. Dr. Remington concluded that her head injuries were not likely caused by a fall. Sexual assault nurse Carol Stewart noted that A.M.'s vaginal area was injured.

Seattle Police Sergeant Bernd Keurshner, Officer Anh Hoang and Officer Scott Elliott went to Quasim's apartment and questioned him. Quasim told the officers that he had expected their arrival and had prepared his account before they arrived. He told the officers that he had been in A.M.'s apartment, and had engaged in consensual sexual intercourse with her.

Officer Hoang also went to A.M.'s apartment on December 5, 2008, and collected the broken jar and three blood samples from the apartment floor. A few weeks later, a condom was found in A.M.'s apartment and given to police. Tests revealed the presence of deoxyribonucleic acid (DNA) from both Quasim and A.M. on the condom.

Quasim was prosecuted for rape in the second degree by forcible compulsion, and on the alternative theory that A.M. was incapable of consent due to being physically helpless or mentally incapable of resisting. A jury convicted Quasim as charged, finding by unanimous special verdict that he committed the offense both by forcible compulsion and by A.M.'s being unable to consent. He was sentenced to an indeterminate sentence of 102 months to life.

*State v. Quasim*, 168 Wash. App. 1034, *1-*2 (Wash. Ct. App. 2012) (unpublished).

On direct appeal, the Washington Court of Appeals affirmed petitioner's conviction. *Id.* Petitioner sought review by the Washington Supreme Court, which denied review without comment on October 30, 2012. *State v. Quasim*, 175 Wash. 2d 1020 (2012). The state court issued the mandate on February 13, 2013. Dkt. 12, Ex. 9.

REPORT AND RECOMMENDATION - 3

Petitioner filed a personal restraint petition in January 2013, which was denied by the Washington Court of Appeals. *Id.*, Exs. 10 and 11. The Commissioner of the Washington Supreme Court denied review, and the Washington Supreme Court denied petitioner's motion to modify. *Id.*, Exs. 13 and 15. The state court issued a certificate of finality on February 7, 2014. *Id.*, Ex. 16.

### III.   GROUNDS FOR RELIEF

Petitioner identifies two grounds for relief in his petition for writ of habeas corpus. Those claims may be stated as follows:

(1) Whether the state trial court's exclusion of potential jurors during the peremptory challenge phase of jury selection, without a finding that the closure order was necessary to safeguard petitioner's right to a fair trial, violated petitioner's right to a public trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

(2) Whether the state trial court denied petitioner due process, as guaranteed by the Fourteenth Amendment, because the state failed to prove the existence of the crime charged with evidence independent of petitioner's statements.

Dkt. 5 ("Pet.") at 9, 15.

### IV.   DISCUSSION

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if (1) the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal court may grant the habeas petition only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question

REPORT AND RECOMMENDATION - 4

of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 F.3d at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Court finds that petitioner's claims can be resolved by reference to the state court record. Therefore, an evidentiary hearing is not necessary. *See Totten v. Merkle*, 137 F.3d

REPORT AND RECOMMENDATION - 5

1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record."). For the reasons described below, the Court concludes that petitioner's claims lack merit and should be denied.

A.      Ground One:  Right to a Public Trial

The state trial court utilized a voir dire process by which potential jurors were not present in the courtroom when the trial attorneys exercised their preemptory challenges. *Quasim*, 168 Wash. App. 1034, at *4. The court explained its rationale for this procedure:

> I take *Batson* very seriously, more seriously than the U.S. Supreme Court does [these] days.
>
> So, I don't want to have, say, both of the African-American jurors walk out of our courtroom and then have a challenge and the inability to bring them back.
>
> Okay? I think that's an important enough purpose to exclude the jurors.

*Id.* Defense counsel objected, arguing that the court's procedure implicated "the jurors' right to participate in the open court proceedings." *Id.* The court explained that its procedure was not a courtroom closure, and that the public would have open access to the courtroom: "Oh don't worry. We never close the courtroom when we're doing jury selection. We just send the jurors off to wait for the outcome. But they're here for the whole proceeding, and any audience person who wants to be here gets to be here. We never close our court." *Id.*

Petitioner contends that the state trial court violated his right to a public trial by excluding potential jurors from the courtroom while the attorneys were exercising their preemptory challenges. He also argues that the trial court's reasons for barring potential jurors from the courtroom were erroneous. On direct appeal, the Washington Court of Appeals concluded "that the trial court's voir dire procedures did not result in a closure of the courtroom and did not infringe on the public's right to an open trial proceeding." *Id.*

REPORT AND RECOMMENDATION - 6

The Sixth Amendment guarantees criminal defendants the "right to a . . . public trial." U.S. Const. Amend. VI; *Waller v. Georgia*, 467 U.S. 39, 46 (1984). The right extends to the voir dire proceeding in which the jury is selected. *Press-Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 505-13 (1984); *Presley v. Georgia*, 558 U.S. 209, 213 (2010) (per curiam). The right to a public trial is not absolute and the presumption of openness "may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller*, 467 U.S. at 45. "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Id.* at 48; *see also Presley*, 558 U.S. at 214.

The Supreme Court has never addressed the situation that occurred here, that is, exclusion of the jury venire panel during portions of the jury selection process that are open to the public. This situation might be construed as a partial closure of a portion of voir dire; however, the Supreme Court has never addressed such a situation either. *See United States v. Sherlock*, 962 F.2d 1349, 1356 (9th Cir. 1992) ("*Waller* addressed total closure of a suppression hearing and does not necessarily govern partial closures."); *Angiano v. Scribner*, 366 Fed. Appx. 726, 727 (9th Cir. 2010) ("The Circuits are split as to the applicability of . . . *Waller* to 'partial closures' . . . . On federal habeas review, relief is not available based on conflicting interpretations of circuit precedent.'"); *Alarcia v. Remington*, No. SA CV 10-447-PSG (SH), 2010 WL 3766337, at *8 (C.D. Cal. Sept. 10, 2010), *report and recommendation adopted by*, 2010 WL 3724552 (C.D. Cal. Sept. 14, 2010) ("Petitioner has failed to cite, and the Court has been unable to locate, a single United States Supreme Court case which addresses the Sixth Amendment right to a public trial in the context of a partial closure, such as

REPORT AND RECOMMENDATION - 7

where the trial court excluded certain witnesses from proceedings that were open to the general public.  All of the United States Supreme Court cases relied on by petitioner as support for his claim . . . involved total trial closure.").

As there is no United States Supreme Court authority holding that the exclusion of the jury venire panel from the courtroom during portions of voir dire violates the right to a public trial, the decision of the Washington Court of Appeals cannot be deemed contrary to, or an unreasonable application of, clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the [issue in dispute,] . . . the state court's decision was not contrary to or an unreasonable application of clearly established federal law."); *Brewer*, 378 F.3d at 955 ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.") (citation omitted).  Accordingly, petitioner's first ground for relief should be denied.

B.     Ground Two:  Sufficiency of the Evidence

Petitioner contends the evidence introduced at trial was insufficient to support his conviction for rape in the second degree.  The Washington Court of Appeals rejected this argument:

> The evidence is sufficient if after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt.  *State v. Al-Hamdani*, 109 Wn.App. 599, 608, 36 P.3d 1103 (2001) (quoting *State v. Ortega–Martinez*, 124 Wn.2d 702, 708, 881 P.2d 231 (1994)).
>
> To convict Quasim of second degree rape, the State was required to prove beyond a reasonable doubt that he had sexual intercourse with A.M. by

REPORT AND RECOMMENDATION - 8

"forcible compulsion"[1] or that A.M. was "incapable of consent by reason of being physically helpless or mentally incapacitated."[2] RCW 9A.44.050(1)(a)(b). *State v. Al–Hamdani*, 109 Wn.App. 599, 602-03, 36 P.3d 1103 (2001). When viewed in the light most favorable to the State, there was sufficient evidence to allow a jury to find every element of the charged offense proved beyond a reasonable doubt.

As a preliminary matter, it was undisputed that there was sexual intercourse. Quasim testified that he had sexual intercourse with A.M. on the night of the alleged rape. This element was also established by the evidence at trial, including the condom containing Quasim's and A.M.'s DNA.[3]

**a.** *Forcible compulsion*

When viewed in the light most favorable to the State, there was also sufficient evidence of forcible compulsion. A.M. was badly injured in a physical confrontation the night of the rape. There was ample evidence from A.M. and medical personnel that she suffered significant injuries to her head, face, and vaginal area. There was also evidence of a physical struggle in A.M.'s apartment, including the broken jar, the blood spots, and the furniture being shifted. A.M.'s next-door neighbor, Attenborough, testified that he heard yelling, breaking glass, and sounds consistent with a struggle. In addition, A.M. testified that she was a lesbian and didn't have sex with men, and was never interested in a sexual relationship with Quasim. The jury could have reasonably concluded from this testimony that A.M. was unlikely to have engaged in sexual intercourse with Quasim absent compulsion.

**b.** *Incapable of consent because physically helpless or mentally incapacitated*

When viewed in the light most favorable to the State, there was also sufficient evidence that A.M. was incapable of consent by reason of being physically helpless or mentally incapacitated. A.M. awoke with broken glass in

---

[1] [Court of Appeals Footnote] "Forcible compulsion" includes "physical force which overcomes resistance." RCW 9A.44.010(6).

[2] [Court of Appeals Footnote] "Mental incapacity" is that condition existing at the time of the offense which prevents a person from understanding the nature or consequences of the act of sexual intercourse whether that condition is produced by illness, defect, the influence of a substance or from some other cause. RCW 9A.44.010(4). "Physically helpless" means a person who is unconscious or for any other reason is physically unable to communicate unwillingness to an act. RCW 9A.44.010(5).

[3] [Court of Appeals Footnote] It was also undisputed that the events happened in Washington, and that the parties were not married to each other.

REPORT AND RECOMMENDATION - 9

> her hair and on the floor, consistent with a bottle being broken over her head. She was diagnosed in the hospital as having suffered a closed head injury, and Dr. Remington testified that such an injury can result in amnesia. A.M. testified that she awoke from a state of being passed out, and was unable to recall anything from the previous night, despite the fact that she was a regular drinker and was unlikely to pass out from the small quantity she drank before she lost consciousness. She testified she felt as though she had been drugged. From this evidence, the jury could have reasonably concluded that A.M. was highly intoxicated or unconscious, either from being hit on the head or from being drugged, or both, and was physically helpless or mentally incapable of consent.

*Quasim*, 168 Wash. App. 1034, at *2-*3. The Washington Court of Appeals also rejected petitioner's claim that independent of his statements, there was insufficient evidence to establish the corpus delicti of the charged offense. *Id.* at *3.

In reviewing a claim based upon sufficiency of the evidence, a federal habeas court must view the evidence in the light most favorable to the prosecution. *See Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990). Review is sharply limited, and the federal court owes great deference to the trier of fact. *Wright v. West,* 505 U.S. 277, 296-97 (1992). Evidence is sufficient if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

Petitioner's primary argument is that the evidence did not satisfy the corpus delicti rule. The corpus delicti rule is a state rule. It is not grounded in federal law or the federal Constitution. Thus, it cannot form the basis for a federal habeas claim. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (alleged violation of state law evidentiary rule is not cognizable on federal habeas review).

As to the allegation of sex by forcible compulsion, petitioner argues that there was no evidence to connect the alleged force to the sexual intercourse, and he points out that A.M. did not suffer any defensive injuries. The record does not support petitioner's claim. As the

REPORT AND RECOMMENDATION - 10

Washington Court of Appeals reasoned, A.M. was badly injured from the night of the rape, including injuries in her vaginal area; there was evidence of a struggle in her apartment; A.M.'s next door neighbor testified that he heard sounds consistent with a struggle; and A.M. testified that she was a lesbian, did not have sex with men, and was never interested in a sexual relationship with petitioner. *See* Dkt. 15, Ex. 23 at 148-49, 150-53, 155; *Id.*, Ex. 24 at 68, 70-76, 134, 163-66. This evidence is sufficient to satisfy the "*any* rational trier of fact" standard.

With regard to the mental incapacity prong of the offense, petitioner argues that although A.M. testified she did not remember what happened on the night of the rape, "other evidence suggested that A.M. was conscious during those critical hours." Pet. at 19. He does not identify the "other evidence" he references, and, in any event, his assertion is insufficient to overcome the deference this Court owes to the state court. Petitioner also argues that there was "simply no evidence presented that [A.M.] was incapable of consenting to sexual intercourse." *Id.* To the contrary, the evidence viewed in the light most favorable to the prosecution establishes that A.M. awoke on the floor with broken glass in her hair, consistent with a bottle being broken over her head; she testified that she was unable to remember the previous night even though she was unlikely to pass out from the small quantity she remembers drinking; and she testified that she felt as though she had been drugged. Dkt. 15, Ex. 24 at 127, 148-49, 160, 164, 166. This evidence is sufficient to support petitioner's conviction.

Petitioner fails to establish that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law. Accordingly, his second ground for relief should be denied.

V.   CERTIFICATE OF APPEALABILITY

Petitioner has filed a motion for a certificate of appealability. Dkt. 14. A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his

federal habeas petition only after obtaining a certificate of appealability ("COA") from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the Court concludes that petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in this action. Thus petitioner's motion for certificate of appealability should be denied.

## VI. CONCLUSION

For the reasons set forth above, the Court recommends that petitioner's petition for writ of habeas corpus be DENIED and this action be DISMISSED with prejudice. The Court further recommends that petitioner's motion for a certificate of appealability, Dkt. 14, be denied with respect to all claims asserted in this action. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **July 8, 2014**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **July 11, 2014**.

1 | This Report and Recommendation is not an appealable order.  Therefore, a notice of
2 | appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until
3 | the assigned District Judge enters a judgment in the case.
4 | Dated this 17th day of July, 2014.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13